UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE: JOHNNY FRANKLIN CHATMAN
AVIS C. CHATMAN
Debtor(s).
_____/

Case No.: 3:10-bk-02032-JAF

Chapter 11

JOHNNY FRANKLIN CHATMAN

Plaintiff(s)

v.

Adv. No. 3:10-ap-_____-JAF

CREDIT UNION OF TEXAS
Defendant.
_____/

## COMPLAINT

JOHNNY FRANKLIN CHATMAN, sues CREDIT UNION OF TEXAS and states:

### Introduction

1. This is an action for determination of the extent, validity or priority of the alleged lien of the Defendant pursuant to Fed.R.Bankr.P. 7001 and for Declaratory Relief related thereto.

### Jurisdiction and Venue

2. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United Stated Code in that this proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11 and concerns property of the Debtors in that case.

3. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) of Title 28 of the United States Code.

4. This matter is a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order.

5. Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

**Parties**

6. The Plaintiff in this case is the Debtor under Chapter 13 of Title 11 of the United States Code in case number 3:10-bk-02032.

7. The Defendant, CREDIT UNION OF TEXAS is a credit union that had entered into an alleged lease agreement with the Debtor.

**Factual Allegations**

8. Prior to the filing of the Chapter 11 case, the Plaintiff had signed a document in favor of the Defendant entitled "Open End Motor Vehicle Lease Agreement" on June 25, 2008. The alleged lease was for a 2005 Mercedes Benz vehicle identified in the Debtors' Schedules. A copy of the alleged lease is attached as Exhibit 1.

9. The Chapter 11 case of the Plaintiff was commenced by the filing of a voluntary petition with the Clerk of this Court on March 15, 2010.

10. Defendant subsequently filed a **MOTION FOR RELIEF FROM STAY OR, ALTERNATIVELY, MOTION TO COMPEL ASSUMPTION OR REJECTION OF THE LEASE, TO COMPEL PERFORMANCE OF LEASE OBLIGATIONS AND FOR ADEQUATE PROTECTION FILED BY THE CREDIT UNION OF TEXAS REGARDING A LEASED 2005 MERCEDES BENZ SL** which alleged a lease agreement and demanded assumption or rejection of the lease related to the vehicle.

11. The lease was in reality a disguised security agreement. The lease provided for 60 monthly payments of $1,085.50. However, the residual value and payoff of the vehicle

at the expiration of the alleged lease term was only $1,085.50. The payoff and residual were a mere 1/60th of the total value of the contract.

### COUNT I – DETERMINATION OF THE EXTENT, VALIDITY OR PRIORITY OF LIEN

12. The Plaintiff realleges the allegations in factual allegations above.

13. The alleged lease between the parties was in reality a disguised sale. Sec. 671.201 of the Florida UCC provisions provides in relevant part:

(35) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. . . . Whether a transaction in the form of a lease creates a security interest is determined by the facts of each case; however:

(a) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee and:

1. The original term of the lease is equal to or greater than the remaining economic life of the goods;

2. The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

3. The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or

4. The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

14. All of the above factors are present in this case.

15. Accordingly, the Plaintiff would request that the Court determine that the alleged lease between the parties created a security interest.

# RELIEF REQUESTED

Plaintiff requests that this Court:

1. Enter Judgment against Credit Union of Texas;

2. Order/Declare that the alleged lease is in reality a disguised sale that created a security interest;

3. Deny the Motion for Relief of the Defendant based upon the nature of the security interest created.

DATED this 29 day of April, 2010.

Law Offices of Mickler & Mickler

By:_____
Bryan K. Mickler
Florida Bar No. 091790
Attorney for Plaintiff(s)
5452 Arlington Expressway
Jacksonville, FL 32211
(904) 725-0822
(904) 725-0855 FAX
bkmickler@planlaw.com

wp\docs\bankruptcy\11\chatman\lease complaint



# EXHIBIT 1

**FAIR**®

# OPEN END MOTOR VEHICLE LEASE AGREEMENT

| LESSEE | CO-LESSEE | LESSOR |
|---|---|---|
| Name: MICKENS INVESTMENTS<br>817 EDGEWOOD AVE. WEST<br>Address: JACKSONVILLE, FL 32208- | Name: JOHNNY F. CHATMAN<br>817 EDGEWOOD AVE. WEST<br>Address: JACKSONVILLE, TX 32208- | Name: Credit Union Services, Inc.<br>8131 LBJ Freeway, Suite 400<br>Address: Dallas, Texas 75251 |
| LEASE DATE: 6/23/2008 | MEMBER NO.: 318916 1 | LEASE NO.: 610-18917-1 |

This Motor Vehicle Lease Agreement, referred to as the "Lease," is an open-end lease, which covers the lease of the motor vehicle described below. As used in this Lease, the words "Lessor," "we," "our" and "us" refer to the person or entity described above as Lessor or anyone to whom this Lease is assigned. The words "Lessee," "you," and "your" refer to each person or entity who signs this Lease as Lessee. The words "Lease Term" refer to the scheduled term of this Lease. The word "Vehicle" refers to the vehicle you are leasing under this Lease. The disclosures included in this Lease are also made on behalf of Credit Union Services Incorporated (CUSI).

## 1. DESCRIPTION OF VEHICLE.

| ☐ New<br>☒ Used | Year<br>2005 | Make<br>Mercedes Benz | Model<br>SL CLASS | Body Style<br>2dr Conv SL500 | Mileage<br>61,000 | Serial Number<br>WDBSK75F85F107043 |
|---|---|---|---|---|---|---|

If a vehicle is being traded in to reduce the capitalized cost, the trade in is a _____ N/A _____ and the credit amount is shown in paragraph 2.f.
Year  Make  Model

## 2. FEDERAL CONSUMER LEASING ACT AND OTHER DISCLOSURES.

| a. Amount Due at Lease Signing or Delivery (Itemized below)*<br>$ 1,085.50 | b. Monthly Payments<br>Your first monthly payment of $ 1,085.50 is due on 6/23/2008, followed by 59 payments of $ 1,085.50 due on the 22nd of each month beginning on 8/22/2008. The total of your monthly payments is $ 65,130.00+ | c. Other Charges<br>(not part of your monthly payment)<br>Disposition Fee (if you do not Purchase the Vehicle) $ 500.00<br>Total $ 500.00 | d. Total of Payments<br>(the amount you will have paid by the end of the Lease)<br>You will owe an additional amount if the actual value of the Vehicle is less than the residual value shown in paragraph 2.g.iv.<br>$ 65,630.00 |
|---|---|---|---|

*Itemization of Amount Due at Lease Signing or Delivery

| e. Amount Due at Lease Signing or Delivery | | f. How the Amount Due at Lease Signing or Delivery will be Paid: | |
|---|---|---|---|
| i. Capitalized cost reduction | $ N/A | Net Trade-In Allowance | $ N/A |
| ii. Tax on capitalized cost reduction | N/A | Rebates and Noncash Credits | N/A |
| iii. First monthly payment (incl. tax) | 1,085.50 | Amount to be Paid in Cash | 1,085.50 |
| iv. Refundable security deposit | N/A | | |
| v. Title and registration fees | N/A | | |
| vi. Membership fee | N/A | | |
| vii. Upfront sales/use tax on vehicle | N/A | | |
| viii. N/A | N/A | | |
| Total $ | 1,085.50 | Total $ | 1,085.50 |

g. Your Monthly Payment is Determined as Shown Below:

i. Gross capitalized cost. The agreed upon value of the Vehicle ($ 63,125.00) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance). .......... $ 54,180.00
   If you want an itemization of this amount, please check this box. ☐
ii. Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost. ............................................................ - 0.00
iii. Adjusted capitalized cost. The amount used in calculating your base monthly payment. ............... = 54,180.00
iv. Residual value. The value of the Vehicle at the end of the Lease used in calculating your base monthly payment. - 1,085.50
v. Depreciation and any amortized amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. ............................................. = 53,094.50 +
vi. Rent charge. The amount charged in addition to the depreciation and any amortized amounts. ............ + 7,774.90
vii. Total of base monthly payments. The depreciation and any amortized amounts plus the rent charge. = 60,869.40 ÷
viii. Lease payments. The number of payments in your lease. This is also the number of months in the Lease Term. ÷ 60
ix. Base monthly payment. ........................................................... = 1,014.49
x. Monthly sales/use tax. ............................................................ + 71.01
xi. N/A .............................................................................. + N/A
xii. Total monthly payment. ........................................................ = 1,085.50

Rent and Other Charges. The total amount of rent and other charges imposed in connection with your Lease $ 8,274.90

Early Termination. You may have to pay a substantial charge if this Lease ends early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier the Lease ends, the greater this charge is likely to be.

h. Excessive Wear and Use. You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 15,000 miles per year at the rate of $0.18 per mile.  1,085.50 (D8)
i. Purchase Option at End of Lease Term. You have an option to purchase the vehicle at the end of the Lease Term for $ 4,029.50  plus applicable fees and taxes and any amounts then owed under the Lease.
j. Other Important Terms. See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

* Estimated based on current tax rates   + Based on Lease using full Lease Term

3. TAXES, OFFICIAL FEES AND OTHER CHARGES. You will pay when due to us or as we direct all sales, use, property or other taxes and all official fees and charges of any nature, including titling and registration fees, (together with any interest or penalties not arising from our negligence) imposed in connection with this Lease or levied on the Vehicle by any federal, state, county or local government authority (excepting, however, any taxes based on our net income). The total amount we estimate you will pay for official fees and taxes over the Lease Term, whether included with your monthly payment or assessed otherwise is $ 5,010.60
4. DISCLAIMER OF WARRANTIES. Unless checked _____, the Vehicle is covered by the manufacturer's new car warranty. Unless the Vehicle is used and we are providing you a _____, we are leasing the Vehicle to you "AS IS" and WE DO NOT MAKE ANY EXPRESS WARRANTIES OR REPRESENTATIONS. IN ADDITION, THERE ARE NO IMPLIED WARRANTIES OF MERCHANTIBILITY, INCLUDING THE TERM OF ANY WARRANTY WE ARE MAKING, OR ANY WARRANTY OF FITNESS FOR ANY PARTICULAR PURPOSE OR ANY OTHER IMPLIED WARRANTIES. We are not liable to you or to any other person for any loss or damage of any kind, however caused, by the Vehicle, its repair, maintenance or equipment, or its failure not covered by a warranty we are making. We shall not be liable for any interruption of service, loss of business or for any anticipated profit or consequential damages. Any statement we make concerning the model year of the Vehicle is for identification purposes only.

**EXHIBIT A**

| 5. VEHICLE INSURANCE. The vehicle is insured by (refer to insurance requirements in Paragraph 8): |||||||
|---|---|---|---|---|---|---|
| Policy Number | Insurance | any | Insurance Agent | Agent Addrer | | Agent Phone Number |
| | | | | | | |

6. SERVICE CONTRACT. While you have no obligation to do so, you understand that you may (sub ect to th contract being available to us) purchase a contract under which you will have the right to have a portion of the costs of repair of certain major mechanical breakdowns of the Vehicle and some related expenses paid by the contract administrator listed in the contract. The term of this protection is the number of months stated here from the date of this Lease or until the Vehicle's odometer shows the miles stated here, whichever happens first. If you have elected to purchase a service contract, you have also reviewed the terms of the service contract which describe the details of this protection and understand that a copy of the filled-in contract will be sent to you as soon as practical. If checked ____ you have chosen to purchase the service contract for the price shown here, which will be paid at Lease signing, if so indicated in paragraph 2.e., or otherwise amortized in the monthly payments.

| Months | N/A | Miles | N/A | Service Contract Price $ | 0.00 |
|---|---|---|---|---|---|

7. PAYMENTS AND LATE CHARGE. You agree to make the monthly payments in the amounts and at the times specified in paragraph 2.b. You agree to make any other payments you owe under this Lease within 10 days of our invoice. If any monthly payment is not paid within 10 days of its scheduled due date, you agree to pay us a late fee of 5% of the late monthly payment or such lesser amount as may be set by law. The maximum late charge will be $15 if the Lease is subject to the Colorado Uniform Consumer Credit Code, $25 if the Lease is subject to the Kansas Uniform Consumer Credit Code and $10 if the Lease is subject to the Maine Uniform Consumer Credit Code. You also agree to pay us an administrative charge of $15 if a check you give us is dishonored.

8. VEHICLE INSURANCE REQUIREMENTS. You are required to pay for and provide to us insurance on the Vehicle in the following coverages and amounts: (a) listing you as a named insured and us as additional insured: (I) Automobile Liability Insurance - limits for bodily injury or death of not less than $100,000 for any one person and not less than $300,000 for any one accident; (ii) Property Damage Insurance - limits of not less than $50,000 and (b) listing you as a named insured and Credit Union of Texas, or any other entity we specify, as the loss payee: (i) Collision Insurance - with a deductible amount of not more than $500; (ii) Comprehensive, Fire and Theft Insurance - with a deductible amount of not more than $500; (iii) Uninsured Motorist Insurance.
You will continuously provide us evidence of effective insurance in the coverages and amounts specified above. We will not deliver the Vehicle to you prior to receipt of such evidence. The insurance policy must be issued by a company acceptable to us, be primary, provide us with 10 days advance notice of any cancellation or change of coverage and otherwise be acceptable to us.
You authorize us to: (a) receive or collect any money paid under the insurance; (b) direct any insurer to pay all insurance proceeds directly to us; (c) endorse checks or drafts relating to the insurance payments on your behalf; and (d) settle or release any claim with respect to the insurance. If you have an accident or loss or damage of any kind to the Vehicle, you must promptly notify the insurance company and us, and you must do the things required by law and by the insurance company to protect our interest. If you do not provide us with evidence that the required insurance is in force, at our option we may buy insurance to protect our interest in the Vehicle. If we do so, you must repay us for the premiums of such insurance. THE INSURANCE WE BUY MAY PROTECT ONLY OUR INTEREST AND WILL NOT INCLUDE LIABILITY INSURANCE YOU ARE REQUIRED BY LAW TO HAVE, AND THE PREMIUM EVENTUALLY CHARGED TO YOU CAN BE QUITE HIGH. EVEN IF WE ARE ABLE TO PURCHASE SOME FORM OF INSURANCE WHICH PROVIDES SOME COVERAGE OR PROTECTION FOR YOU AND DECIDE TO DO SO, THE CHANCES ARE THAT THE PREMIUM WILL BE MUCH HIGHER THAN IF YOU PURCHASED IT YOURSELF.
If Florida law applies, the valid and collectible liability insurance and personal injury protection of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection required by § 324.021(7) and 627.736 Florida statutes.

9. TITLING AND REGISTRATION. Legal title to the Vehicle will be in our name, and the Vehicle will be titled and registered by you or us as we direct.

10. VEHICLE MAINTENANCE, OPERATING COSTS AND USE. You agree, at your expense, to maintain the Vehicle in good working order and see that all needed maintenance, service and repairs are performed when needed, but at least as often as set forth in the owner's manual for the Vehicle, or as requested by the manufacturer in connection with any recall program. We may require you to produce receipts indicating that all such maintenance, service and repairs have been performed, and you agree to retain any such receipts throughout the term of the Lease. You understand you must obtain and pay for all gas, oil, fluids, anti-freeze and replacement tires for the Vehicle. You agree to take the Vehicle to an appropriate factory authorized dealer for all service and repairs under any manufacturer's warranty. You agree that, upon request, we may inspect the Vehicle at any reasonable time. You agree that you will not make any changes to the Vehicle (such as adding, removing or modifying any accessories, equipment or parts) which would decrease its economic value or functional utility. All changes made to the Vehicle which cannot be removed or modified without decreasing its economic value or functional utility will become our property when such change is originally made.
You are responsible to make sure that neither you nor anyone else will: (a) use the Vehicle for any illegal purpose or in any way which is illegal; (b) use the Vehicle in any way which would cause cancellation or suspension of the required insurance; (c) use the Vehicle as a public or private carrier; or (d) remove the Vehicle from the state where you reside when you sign this Lease for more than 30 days or from the United States for any period unless you have our prior written consent.

11. STANDARDS OF EXCESS WEAR AND USE. When you return the Vehicle, it should be in good operating condition and appearance and saleable at wholesale value without deduction. At early termination, you will be obligated for our expenses to put the Vehicle in this condition, but at the end of the Lease Term you will be liable for the appraised and/or actual repair costs to put the Vehicle in this condition. The most common ones are ones which you may be liable include:
Repair of: (a) inoperative mechanical parts including power accessories; (b) dents, scratches, chips or rusted areas or series of these on the body; (c) mismatched paint or marks left by special identification; (d) cracks, scratches, pits or chips in the windshield, broken windows or inoperative window mechanisms, broken headlight lenses or sealed beams; (e) bumper dents or scratches through the chrome on bumpers; (f) broken grilles or dents in the grilles; (g) single dents or series of small dents on other trim parts, including headlight and taillight bezels; and (h) seats, seat belts, headlining, door panels, dashboards or carpeting which is torn, damaged or burned.
Replacement of: (i) any tire not part of a matching set of 5 tires (or 4 with emergency spacesaver spare), or tires with less than 1/8" of tread remaining at the shallowest point; and (j) missing parts, accessories and adornments, including bumpers, ornamentation, aerials, hubcaps, chrome stripping, rearview mirrors, radio and stereo components and spare tire.
You also recognize that if the Vehicle has suffered frame damage or substantial other damage or if its odometer has been inoperative or tampered with, even though the damage or odometer may have been repaired, the value of the Vehicle will be substantially less than the value of an identical Vehicle which has not had frame damage or suffered substantial other damage or had an inoperative odometer or one which was tampered with. You understand that your obligations include this difference.

12. LEASE PAYOFF AMOUNT. Your liability if the Lease is terminated early may be affected by the Lease Payoff Amount. At any time the Lease Payoff Amount is equal to the sum of the adjusted capitalized cost shown in paragraph 2.g.iii. minus the depreciation portion of previously due payments. The depreciation portion of a monthly payment equals the base monthly payment amount shown in paragraph 2.g.ix. minus the "rent charge" portion of the payment which will change with each monthly payment. The rent-charge portion is calculated by multiplying the difference between (a) the adjusted capitalized cost and (b) the sum of one base monthly payment and the depreciation portions of previously due monthly payments by (c) the constant rate which over the term of the lease reduces the adjusted capitalized cost to the residual value shown in paragraph 2.g.iv. by subtracting the depreciation portions of all base monthly payments. These calculations follow the rules for lessors as to direct financing leases set forth in Statement of Financial Accounting Standards No. 13 issued by the Financial Accounting Standards Board and assume a 360-day year of 12 months of 30 days each and that each payment is made on the exact due date. The calculation of your liability at early termination is made using the assumption that the termination occurs on the last day of the particular billing cycle.

13. FURTHER PURCHASE OPTION INFORMATION. This is an agreement of leasing only, and unless and until you exercise a purchase option, you do not have and shall not acquire any ownership rights in the Vehicle. In addition to your end of Lease Term purchase option described in paragraph 2.l., you will have the option to purchase the Vehicle at any time during the Lease Term. The purchase price will be the sum of the following: (a) Any past due monthly payments and any other amounts caused by your failure to perform your Lease obligations; (b) The Lease Payoff Amount as figured in paragraph 12 plus $250; plus (c) Any official fees and taxes imposed in connection with purchase of the Vehicle.
You acknowledge that this is a true lease and you will have absolutely no equity or other ownership rights in the Vehicle or its replacement parts unless you exercise the purchase option. Whether you purchase the Vehicle during or at the end of the Lease Term, the purchase will be on an AS-IS, WHERE-IS basis, you will give us not less than 15 days notice of purchase and we will send you or your lender the title when we have received the purchase price.

14. VEHICLE RETURN. Unless you choose to purchase the Vehicle, you agree that upon Lease termination, either early or scheduled, you must return the Vehicle to the place we will specify. You also agree in that case to pay your termination liability as figured in paragraph 16 or 17, whichever is applicable. If you do not return the Vehicle to us at scheduled termination as required, you will pay us an additional monthly payment for each month or portion of a month you keep the Vehicle. You also realize that you are not entitled to keep the Vehicle after the end of the Lease Term and that any retention of the Vehicle beyond the end of the Lease Term without our consent is a default under the Lease.

15. VEHICLE VALUATION AT EARLY TERMINATION. Your early termination liability if you do not purchase the Vehicle and the Vehicle has not become a casualty loss may be affected by the Realized Value of the Vehicle. The Realized Value may be determined in one of the following ways: (a) by a written agreement between you and us if it is signed within 10 days after termination; (b) by a professional appraisal obtained at your expense of the wholesale value of the Vehicle within 10 days after termination, if you and we can each agree to your selection of an independent third party qualified to make the appraisal; or (c) if the Realized Value is not determined within 10 days after termination, we will determine the Realized Value by selling the vehicle at wholesale value or in another commercially reasonable manner, such as the highest of 3 bids we receive, we deem appropriate.
You realize that the Realized Value amount will be exclusive of any official fees and taxes imposed upon disposition of the Vehicle.

16. EARLY TERMINATION LIABILITY. You may terminate this Lease at any time after you sign it on 15 days prior notice to us. We may terminate it as permitted in paragraph 19 if this lease is in default or if certain conditions exist as discussed in paragraph 18. If you do not purchase the Vehicle as provided in paragraph 13 and

except as provided in paragraph 18, the amount you owe us upon early termination will be the sum of the following: (a) a disposition charge of $500; plus (b) any past due monthly payments and any other amounts ___ ed by your failure to perform your Lease obligations, including the amount ___ may be due under paragraph 11; plus (c) where the Lease Payoff Amount calculate___ ___ or paragraph 12 is greater than the Vehicle's Realized Value, the differen___ ___us (d) any official fees and taxes imposed in connection with Lease termination (for example, sales or use taxes due on a deficiency under "c" above).

17. SCHEDULED TERMINATION LIABILITY. If you do not purchase the Vehicle as provided in paragraph 2.i, the amount you will owe us at the end of the Lease Term will be the sum of the following: (a) a disposition charge of $500; plus (b) any past due monthly payments and any other amounts caused by your failure to perform your Lease obligations, including the amount that may be due under paragraph 11; plus, (c) the amount, if any, by which the residual value shown in paragraph 2.g.iv. exceeds the Realized Value determined under paragraph 15. If the Realized Value is more, we will refund you any excess which remains after we credit the excess to your obligations to us; plus (d) a charge equal to the lesser of any excess mileage charge indicated in paragraph 2.h. or the amount of the deficiency described in "c" which is uncollectible because of the three payment rule described below; plus, (e) any official fees and taxes imposed in connection with Lease termination (for example, sales or use taxes due on a deficiency under "c" above).

There is a rebuttable presumption that if the deficiency under "c" exceeds three monthly lease payments, the residual value is unreasonable and was not established in good faith. As a result, your liability under "c" will be limited to the sum of three monthly lease payments; (e) except for any difference which is due to unreasonable wear or use; or (b) unless you agree after the end of the Lease Term to make a higher payment; or (c) unless we prove in a lawsuit for a higher payment that the residual value was a reasonable estimation of the Vehicle's likely end-of-term wholesale value at the time of Lease signing and was made in good faith. Whether or not we are able to prove that and provided the next exception does not apply, we will pay your attorney's fees to the extent the difference is not due to unreasonable wear or use; or (d) unless you have entered into this Lease primarily for agricultural, business or commercial purposes or you are a government agency or an organization.

18. DAMAGE, LOSS OR POTENTIAL LOSS OF VEHICLE. You agree to be responsible for the risk of loss, damage or destruction of the Vehicle during the Lease Term and until you return the Vehicle to us or purchase it. If the Vehicle is damaged or destroyed in an accident or otherwise or is confiscated by any governmental authority or is stolen or is abandoned or is subject to undue peril, you will notify us of such occurrence or condition as soon as possible. If the Vehicle is damaged but is in a condition which we believe is reasonably repairable, you will have the necessary repairs made promptly. With respect to any other occurrence or condition included above, we reserve the right to terminate the Lease. If the Lease is terminated, the Lease provides you partial "GAP" protection. Thus, if your insurance company honors our claim for the Vehicle's actual cash value, your liability will be limited to the sum of your policy deductible, any other deductions your insurance company makes in honoring our claim, such as for miles or condition, any other amounts then due under the Lease, applicable taxes and the amount, if any, by which the difference between the Lease Payoff Amount and the vehicle's actual cash value plus insurance company deductions you owe exceeds $50,000. If your insurance company does not fully honor our claim, you will be liable for the amount that would then be due under paragraph 13 to purchase the Vehicle.

19. DEFAULT. If any information in your credit application is false or misleading or if you fail either to make a monthly payment when due or otherwise to perform your Lease obligations or if you or any guarantor of your Lease obligations becomes insolvent or dies, we can treat this lease as being in default. In the event of a default, we may do any or all of the following without giving you advance notice: (a) take any reasonable measures designed either to correct the default or to save ourselves from loss, such as paying any delinquent registration fees which you have not paid as required in paragraph 8, or purchasing insurance to protect our interests if you fail to fulfill your obligations under paragraph 8, in which case you will pay us for the costs and expenses incurred and also pay us a service charge of $20; (b) terminate the Lease and your rights to possess and use the Vehicle; (c) take possession of the Vehicle by any method or means permitted by law; (d) determine your termination liability on any early termination basis under paragraph 16; (e) apply your security deposit to any amounts you owe; and (f) pursue any other remedy permitted by law. You also agree in the event of a default to be liable for all collection, repossession, storage, and legal costs, including our attorneys' fees, to the extent permitted by law and to pay us interest at 18% per annum or at such lesser maximum rate as may be set by law on all those costs and on all your other obligations which you owe us after termination. If you or we request, any dispute concerning your Lease liability will be decided by binding arbitration. The arbitration would be conducted under the Commercial Arbitration Rules of the American Arbitration Association. Arbitration would not preclude our utilizing the court system to obtain a repossession order or the like.

20. LIENS AND INDEMNITY. You agree to keep the Vehicle and this Lease free from any liens or encumbrances we do not create. You also agree to indemnify and hold us harmless against any claim, liability, loss or expenses arising from the operation, condition or ownership of the Vehicle, including those arising from a strict or vicarious liability claim. You realize your indemnity includes our court costs and attorneys' fees in connection with any action against which you have indemnified us.

21. SECURITY DEPOSIT. Any security deposit shown in paragraph 2.e.iv. will be maintained in a separate account, but shall be a general obligation of ours. We may use this security deposit to pay any amounts that you are required to pay under this Lease, but do not. After you perform all obligations under this Lease, any remaining balance of the security deposit will be returned to you promptly. No interest or any other form of increase will accrue or be paid to you on the security deposit, unless otherwise required by law.

22. MORE THAN ONE LESSEE. If more than one person signs this Lease as Lessee, all signers will be jointly and severally liable. You agree that we can waive or delay the enforcement of our rights as to one signer without affecting our rights as to any other signer. You also agree that we can release any signer from his or her obligations without releasing any other signer from their obligations.

23. ASSIGNMENT. We can assign our interest in this Lease and to the Vehicle without your consent. If we do so and notify you, you agree to make all payments thereafter to the assignee and, unless otherwise provided by law, agree not to make any claims you have against the assigning lessor against the assignee. YOU UNDERSTAND THAT YOU HAVE NO RIGHT TO ASSIGN ANY OF YOUR RIGHTS UNDER THIS LEASE AND THAT YOU HAVE NO RIGHT TO SUBLEASE, ASSIGN OR TRANSFER THE VEHICLE.

24. GENERAL. You and we further agree that: (a) this Lease sets forth all your and our agreement as to the leasing of the Vehicle; (b) this Lease will be governed by the laws of the state where it is signed by you and us; (c) our waiver of any default or our failure to insist upon the keeping of any of your obligations will not be a waiver of any of the terms of this Lease or bar our actions on future defaults; (d) we have no obligation to provide a replacement vehicle for any reason; (e) notices must be in writing addressed to the appropriate party at the address at the beginning of the Lease or other address of which the party has given notice, and each party should give the other prompt notice of any change of address; (f) the option of arbitration discussed in paragraph 19 will be available in any other dispute respecting the Lease; (g) you give us a security interest in any returned premiums related to a service contract or other item paid for as part of the monthly payments; and (h) we are not responsible for any delay in Vehicle delivery or any other circumstances beyond our control or for any property in the Vehicle when it is returned or repossessed.

SIGNATURES. NOTICE TO LESSEE: (1) Do not sign this Lease before you have read all pages and do not sign this Lease if it has any blank space. (2) You have a right to receive a completed copy of this Lease. (3) By your signature below, you acknowledge that we will assign all of our rights as the Lessor under this Lease to CUSI. CUSI in turn will grant a security interest in the Lease as collateral to Credit Union of Texas.

By signing below, you acknowledge that: (1) you have read the entire Lease before signing it; (2) you have received a legible, fully completed copy of this Lease; (3) you have received a fully completed copy of any credit statement or other document you have been asked to sign in connection with this Lease; and (4) you have accepted delivery of the Vehicle and it is in good operating order and condition. By signing below, both you and we agree to the terms, conditions and obligations of the Lease and we hereby assign this Lease to CUSI under and in accordance with the terms and conditions of the motor vehicle lease assignment agreement between us and CUSI.

| Lessee Signature(s) | Lessor Signature |
|---|---|
| Lessee Signature: X _Mickens Investments_ Date: 6/25/08 | Lessor Signature: X _P. Bedford_ Date: |
| Co-Lessee Signature: X _John Clark_ Date: 6/25/08 | |

THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.

ESTE ES UN CONVENIO DE ARRENDAMIENTO. NO ES CONVENIO DE COMPRA. FAVOR DE REVISAR ESTOS ASUNTOS CON CUIDADO Y SI USTED TIENE CUALQUIER DUDA DEBE BUSCAR CONSEJO PROFESIONAL INDEPENDIENTE. USTED TIENE EL DERECHO A UNA COPIA EXACTA DEL CONVENIO QUE USTED FIRMO.

You understand you should make all payments due under this Lease to: CREDIT UNION OF TEXAS, PO BOX 515389, DALLAS TX 75251-5389, ATTN: VEHICLE LEASE SERVICING DEPARTMENT. Any inquiries concerning your account should be addressed to Credit Union of Texas at the address above or at (972) 664-1088. Any inquiries regarding Vehicle maintenance, warranties, etc., should be referred to the original dealer/Lessor.



EXHIBIT B